IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 11, 2003

## STATE OF TENNESSEE v. KENNETH JORDAN

**Appeal from the Criminal Court for Davidson County**
**No. 2001-D-2006     Cheryl Blackburn, Judge**

---

**No. M2002-01010-CCA-R3-CD - Filed May 8, 2003**

---

The defendant, Kenneth Jordan, entered pleas of guilt to aggravated burglary and aggravated assault. The trial court imposed Range I sentences of six years for each offense to be served concurrently. At the conclusion of a sentencing hearing, the trial court imposed a sentence of one year with split confinement. The defendant was given the choice of serving one year with work release and the balance on probation, or participating in a Lifeline Therapeutic Community Program with the opportunity to apply for early release. In this appeal of right, the defendant argues that the trial court failed to adequately consider the statutory guidelines and should have granted probation. The judgments of conviction are affirmed and the effective sentence is modified to require 90 days in jail with work release followed by supervised probation.

### Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed as Modified

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Kenneth Jordan.

Paul G. Summers, Attorney General & Reporter; Helena Walton Yarbrough, Assistant Attorney General; and Brett Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On July 22, 2001, the defendant, Kenneth Jordan, drove his fiancé, Danielle Royster, to the residence of the victim, Romulus Whitt. At the time, the victim was exercising visitation with his one-and-one-half-year-old son, who had been born as the result of his prior relationship with Ms. Royster. As the defendant remained in his vehicle, Ms. Royster walked to the victim's residence in order to take custody of her son. The victim did not answer the door. Ms. Royster, crying, returned to the car without her son and asked the defendant to contact the police. Instead, the defendant removed a tire tool from his vehicle, walked to the victim's residence, and kicked in the door. The victim called 911. A fight ensued between the two men and Ms. Royster took custody of her son.

During the altercation, the victim was struck several times with a tire iron. A head injury required sutures. There was some damage to the residence. The police did not arrive until after the fight. At the sentencing hearing, the defendant was the only witness. He claimed that the victim had exhibited increasing hostility during their periodic encounters and that some three months prior to the offense, the victim had threatened him in a telephone conversation. Afterwards, the two men had a verbal confrontation. The defendant contended that the victim had threatened to kill him, had begun to curse Ms. Royster, and had often used the child "as a pawn" as a means of expressing his frustrations.

The defendant testified that on the date of the assault, he had no intentions of hurting the victim and only wanted to "get the child out of there." While the defendant acknowledged that he had armed himself with the tire tool, holding it to his side, and broke through the door after seeing the victim make a gesture through a window, he explained his reaction as "out of pure anger" and insisted that he did not intend to cause any harm to the victim. The defendant claimed that he reacted when the victim charged him. He admitted that he struck the victim on the head with the tire iron and maintained that during their struggle, the victim was able to temporarily gain possession of the weapon.

When questioned by the trial court as to why he had pled guilty to the crimes and why he had not contacted the police upon learning that the victim had failed to return custody of the child, the defendant answered as follows:

> [T]hat is where I'm saying I was wrong. I jumped the gun . . . I acted more than I was supposed to, and . . . I was wrong on that attempt. And I'm wrong for the whole thing. I'm not saying that I don't feel remorseful for what happened. I do feel remorseful. I didn't want to hurt that man at all. I didn't even want . . . to cause any damage to his house . . . and I'm just saying that I apologize for what had happened.

On cross-examination by the state, the defendant explained that he had regularly driven to the victim's residence for custodial changes because Ms. Royster did not have a car and did not have a driver's license. The defendant claimed that the tire tool was simply a device to intimidate the victim into allowing the return of the child. The defendant acknowledged that because of the altercation, the juvenile court had awarded custodial rights to the victim with alternating weeks of physical custody. The defendant had been ordered to stay away during Ms. Royster's custodial times. The juvenile court order had been appealed by the guardian ad litem representing the child and was pending. By the time of the sentencing hearing, the defendant and Ms. Royster were expecting a child of their own.

The victim was not present at the hearing. The state asked for the imposition of a period of incarceration coupled with a zero percent work release due to the defendant's employment. It opposed the grant of immediate probation. At the conclusion of the hearing, the trial court observed that the defendant's intervention created a "serious situation." The trial court expressed doubt that the defendant had fully accepted responsibility for his crimes. While acknowledging that the

defendant was presumed eligible for an alternative sentence, the trial court refused to grant immediate probation due to the volatile nature of child custody exchanges. The defendant was sentenced to one year of split confinement and was permitted to elect between one year at a zero percent work release or the Lifeline program, which would have afforded the opportunity for early release or a suspended sentence upon completion of the program.

In this appeal, the defendant argues that the trial court failed to identify either mitigating or enhancement factors, did not consider sentencing guidelines other than the circumstances of the offense and an inadequate expression of remorse, and committed error by failing to grant immediate probation. The state argues that the defendant lacks the potential for rehabilitation.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are, of course, presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court where, as here, the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(b).

Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and best interest of the defendant and the public. See State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000); State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). The nature and circumstances of the offense may on occasion be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981). In order to warrant denial on that basis, the circumstances must be "'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree' and the nature of the offense must outweigh all factors favoring probation." State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985) (quoting State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981)); see also State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983).

An alternative sentence is any sentence that does not involve total confinement. See State v. Fields, 40 S.W.3d 435 (Tenn. 2001). The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Although Class C, D, and E felony offenders are presumed to be favorable candidates for alternative sentencing, it is the defendant who has the burden of demonstrating his suitability for total or immediate probation. State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995); see Tenn. Code Ann. § 40-35-303(b).

This court has determined that "each case must be bottomed upon its own facts," State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987), and that individualized punishment is the essence of alternative sentencing, State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). This rationale applies to alternative sentences, which are to be considered on a case-by-case basis. While this approach may result in some disparity, each case will be treated fairly and consistently based on the procedures and principles that guide all sentencing determinations and an assessment of the facts and circumstances presented. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

Tennessee Code Annotated section 40-35-103(1) provides assistance in determining whether there is evidence which might overcome the presumptive favorability for an alternative sentence. Fields, 40 S.W.3d at 440. Sentences involving confinement should be founded upon the following considerations: (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; (B) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or (C) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. Tenn. Code Ann. § 40-35-103(1).

Other provisions within the statute that offer some guidance on the issue of probation are as follows:

The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence; and

Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation, and/or community service.

Tenn. Code Ann. § 40-35-103(5)-(6).

The trial court must place on the record the reasons for the sentence. State v. Jones, 883 S.W.2d 597, 599-600 (Tenn. 1994). If the trial court's findings of fact are adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

As a standard offender convicted of a Class C felony, the defendant is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). Because the sentence imposed is six years, the trial court was required to consider probation as a sentencing option. See Tenn. Code Ann. § 40-35-303(b).

The record establishes that the defendant, 22 years of age at the time of sentencing, had no prior criminal convictions, had graduated from Osborn High School in Detroit in 1997, and had been a student at Tennessee State University pursuing a degree in aeronautical and industrial technology. He required one year until the completion of his requirements for a degree. At 5'9" and 169 lbs. and reportedly in excellent physical and mental health, the defendant described himself as a moderate user of alcohol. His admitted prior use of marijuana on a limited basis suggests at least some prior criminal behavior. As indicated, at the time of sentencing, the defendant was engaged to Ms. Royster and they were expecting a child. The defendant was employed at Ingram Books, making $10.50 an hour. As a student, he served as the president of the university chapter of the National Association of Industrial Technology, increasing membership by 65% during his tenure in office. He also helped found a chapter of Alpha Eta Rho, an aviation fraternity, at Tennessee State and but for these offenses, had the opportunity for an internship with the Federal Aviation Authority. The chairman of the AIT Department at the university provided a letter of commendation citing the defendant's "scholarly achievement" and his "leadership qualities." The defendant was certified to fly a single engine plane and had an AutoCAD certification for architectural or mechanical design software.

The presentence report established that the defendant, whose parents continued to live in Detroit, had a stable family history, with seven brothers and sisters ranging in age from 10 to 27. His employment history included several short–term, hourly wage jobs from 1999 through 2002 while he was a student in Nashville. The defendant owned a vehicle subject to an indebtedness of $3,000.00, had credit card indebtedness of $1,745.00, and had a student loan payable in the amount

of $8,195.00. The presentence investigator suggested restitution to the victim in the total sum of $800.00, representing $600.00 in medical bills and $200.00 in lost wages, and standard conditions of probation if granted by the trial court.

The trial court did not make specific findings of fact, did not address the presence of either mitigating or enhancement factors, did not consider each of the provisions of Tennessee Code Annotated section 40-35-103(1) regarding the necessity of confinement, and made little reference to the defendant's social history. It did, however, express particular concern about the seriousness of the offense and the defendant's apparent lack of candor and his failure to accept full responsibility for his acts, concluding that he lacked the potential for rehabilitation. A sentence of split confinement, as ordered here, qualifies as an alternative sentence. While serious, the circumstances of the offenses do not rise to the level of "exaggerated," at least as contemplated by legal precedent. Nevertheless, for the reasons stated by the trial court, the defendant has not, in our view, demonstrated an entitlement to immediate probation.

It is only because the trial court did not address some of the principles governing a sentence of confinement or probation and failed to give consideration to the defendant's academic achievement, his lack of a prior criminal record, and his positive social history, that the statutory presumption of correctness does not apply. In our view, a sentence modification is in order. While the defendant has not demonstrated an entitlement to immediate probation, the evidence suggests that he does, in fact, possess qualities indicating a suitability for rehabilitation. Although the defendant was guilty of the crimes, the circumstances establish the unlikelihood of a sustained intent to violate the law. See Tenn. Code Ann. § 40-35-113(11). As the seriousness of the offenses weigh in favor of the state for some period of incarceration in jail, the positive facets of the defendant's life merit some credit. The period of confinement is modified to 90 days with work release, with the balance to be served on supervised probation on such terms and conditions as the trial court may direct on remand, including restitution to the victim. Further, the trial court granted the defendant the opportunity to participate in a Lifeline Therapeutic Community Program. The record does not indicate the length of this undertaking. If, however, the defendant can satisfactorily complete the program prior to the expiration of the 90-day term, he shall be entitled to probation on terms directed by the trial court. The cause is remanded.

_____
GARY R. WADE, PRESIDING JUDGE